**UNITED STATES FIDELITY &
GUARANTY COMPANY,**
Appellant,

v.

**Glenn S. FOX, Appellee.**

**No. 92–CA–2966–MR.**

Court of Appeals of Kentucky.

Dec. 17, 1993.

Discretionary Review Denied by Supreme
Court April 13, 1994.

James Gordon Fogle and Walter Charles
Jobson, Louisville, for appellant.

Harry L. Hargadon, Jr. and John L. Har-
bolt, Louisville, for appellee.

Before EMBERTON, GUDGEL and
McDONALD, JJ.

GUDGEL, Judge:

This case presents an issue of first impres-
sion respecting the effect which the Ken-
tucky Supreme Court's adoption of the doc-
trine of comparative negligence may have
upon the statutory subrogation rights of
workers' compensation insurers under KRS
342.700(1). Appellant United States Fidelity
& Guaranty Company (USF & G), a workers'
compensation insurer, contends that the Jef-
ferson Circuit Court erred in calculating the
amount which USF & G was entitled to
recover against a tortfeasor by way of subro-
gation pursuant to KRS 342.700(1). We per-
ceive no error in the court's calculation of the
amount which USF & G was entitled to
recover. Hence, we affirm.

Appellee Glenn Fox, an employee of Davis
Trucking Company, was seriously injured
while he was loading steel pipes at the prem-
ises of Mutual Manufacturing and Supply
Company (Mutual). Fox initially pursued a
workers' compensation claim against his em-
ployer. USF & G, his employer's workers'

compensation insurer, paid Fox a total of $82,944.94 in workers' compensation benefits which included $30,166.13 for medical expenses, $17,098.04 for temporary total disability, and $35,680.77 for permanent partial disability.

Next, Fox filed a third-party tort action for damages pursuant to KRS 342.700(1), alleging that Mutual's negligence had caused his injuries. He sought damages from Mutual in the amount of $573,169.03, itemized as follows:

| | |
|---|---|
| Medical Expenses | $ 30,166.13 |
| Lost Wages | $ 43,002.90 |
| Permanent Impairment of his power and ability to earn money | $200,000.00 |
| Past and Present Pain and suffering | $ 50,000.00 |
| Future Pain and Suffering | $250,000.00 |

As is readily apparent, Fox sought to recover from Mutual the exact amount of the medical expenses for which he had been reimbursed by USF & G. However, he sought in his own right to also recover for the loss of certain past and future wages and income in amounts which exceeded the sums paid to him by USF & G for lost wages and permanent impairment. Pursuant to KRS 342.-700(1), USF & G intervened in Fox's tort action and asserted a statutory subrogation claim seeking to recover the collective total of the sums which it had paid to Fox as workers' compensation benefits.

Eventually, Fox's tort action was tried before a jury, which found that although Mutual was negligent and 44% at fault in causing Fox's injuries, Fox was 56% at fault in causing those injuries. Without considering the parties' respective degrees of fault, the jury rendered a special verdict in which it found that Fox had sustained the following damages:

| | |
|---|---|
| Medical Expenses | $ 30,166.13 |
| Lost Wages | $ 43,002.90 |
| Permanent Impairment of Power and Ability to earn money | $ 66,000.00 |
| Past and Present Pain and suffering | $ 18,500.00 |
| Future Pain and Suffering | $ 39,000.00 |
| Total | $196,669.03 |

In calculating the amount of the judgments which should be entered in favor of Fox and USF & G based upon the jury's verdict, the court multiplied three of the five items of the jury's damages award by 44%, which represented the percentage of fault attributable to Mutual. Thus, the court adjudged that USF & G was entitled to recover from Mutual $13,273.09 ($30,166.13 × 44%) of the medical expenses USF & G had already paid to Fox. Further, the court adjudged that Fox was entitled to recover from Mutual $8,140 ($18,-500 × 44%) of the jury's award for past and present pain and suffering, and $17,160 ($39,-000 × 44%) of the jury's award for future pain and suffering.

However, because the sum of the damages Fox was awarded for lost wages and for permanent impairment of his power and ability to earn money exceeded the amount paid to him by USF & G for these same items of damages as temporary total disability and permanent partial disability benefits, the court used a different method in calculating its judgment respecting those items. Over objection, the court awarded USF & G only 44% of the $17,098.04 ($7,523.14) which the company had paid Fox in temporary total disability benefits, and 44% of the $35,680.77 ($15,699.54) which USF & G had paid Fox for permanent impairment of his power and ability to earn money. The court then subtracted USF & G's payments to Fox for lost wages and for permanent impairment of his power and ability to earn money from the jury's awards for those items of damages, and awarded Fox 44% of the resulting figures. In other words, Fox was awarded $11,398.14 ($25,904.86 × 44%) for lost wages, and $13,340.46 ($30,319.23 × 44%) for permanent impairment of his power and ability to earn money. Therefore, based upon the court's calculations, Fox was awarded a judgment against Mutual in the total amount of $50,038.60, while USF & G was awarded a judgment against Mutual in the total amount of $36,495.77. The combined judgment, totalling $86,534.37, was consistent with the jury's finding that Mutual was liable for 44% of the $196,669.03 in damages incurred by Fox. This appeal followed.

USF & G contends that by limiting the amount it was entitled to recover on its statutory subrogation claim, the court in effect

has permitted Fox to make a double recovery in clear violation of the statute. We disagree.

The applicable statute, KRS 342.700(1), provides as follows:

> Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against such other person to recover damages, or proceed both against the employer for compensation and such other person to recover damages, but he shall not collect from both. If the injured employee elects to proceed at law by civil action against such other person to recover damages, he shall give due and timely notice to the employer of the filing of such action. If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense.

This statute speaks in terms of the third-party tortfeasor's "legal liability" to pay damages. Pursuant to the statute, a workers' compensation insurer is entitled to recover from the damages awarded against a "legally liable" third-party tortfeasor up to the amount of "the indemnity paid and payable to the injured employee, less the employee's legal fees and expense." In light of the express wording of the statute, it is clear that USF & G's rights must be determined based upon Mutual's "legal liability" to Fox. Resolution of this issue, however, depends upon how the term "legal liability" is defined for purposes of the statute.

■ In our opinion, the supreme court provided a definitive answer to this issue in *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), which adopted the doctrine of comparative negligence. In *Hilen,* the court clearly held that from the date of its decision forward, a tortfeasor's liability for causing an injury would be directly proportionate to the degree of the actor's fault rather than total liability. Thus, in Kentucky a defendant's legal liability in tort is limited to the percentage of fault which is apportioned to that defendant by the jury, and the award of damages in such a case must be adjusted accordingly. It follows in the instant action, therefore, that Mutual's "legal liability" to Fox and any subrogated parties, both for purposes of tort law and for purposes of KRS 342.700(1), is limited to liability for 44% ($86,534.37) of the damages awarded to Fox by the jury.

The question remains, however, as to whether the court's judgment for this amount was apportioned between the parties to this appeal in such a manner as to permit Fox to make a double recovery as to certain items of damages. Citing *Hillman v. American Mutual Liability Insurance Co.,* Ky., 631 S.W.2d 848 (1982), USF & G argues that before Fox collected anything, USF & G was entitled to be reimbursed, up to the limit of its $82,944.94 claim, for 44% ($61,234) of the $139,169.03 which the jury awarded for medical expenses, lost wages, and permanent impairment of Fox's power and ability to earn money. Because $61,234 is less than USF & G's claim, USF & G urges that the court erred by awarding it a judgment for only $36,495.77 rather than for $61,234. We disagree.

■ True enough, *Hillman* teaches that a tort damages award for lost wages, for permanent impairment of a worker's power and ability to earn money, or for medical expenses is subject to any workers' compensation insurers' claims for statutory subrogation. Moreover, with respect to such an award *Hillman* states that a compensation insurer such as USF & G is entitled to be reimbursed, to the extent of its claim, before the worker collects on the award.

However, *Hillman* was decided before the doctrine of comparative negligence was adopted in *Hilen, supra.* Unlike the matter now before us, *Hillman* involved a judgment which could not be fully satisfied out of the

insurance or other funds which were available to pay the judgment. In attempting to reach a fair result, therefore, the supreme court determined that each party should make a pro rata recovery from the available funds in an amount which was directly proportionate to the relationship "between the portion of the judgment that is subject to subrogation ... and the portion that is not." *Id.* at 850. However, in reaching its decision the court ignored the fact that the damages which were awarded and deemed subject to subrogation included damages for lost wages and permanent impairment of earning capacity in amounts which exceeded those paid to the worker by the compensation insurer. Arguably, as concluded by the trial court in *Hillman*, the sums which exceeded the insurer's liability should not have been included as a portion of the judgment subject to subrogation in determining the insurer's pro rata share because the insurer had not paid and was not liable to pay them. Nevertheless, the supreme court evidently was of the opinion that more equitable results would be achieved through the use of a formula which instead was based upon the parties' pro rata sharing of the entire amount recoverable for the items which were subject to subrogation. The court thereby permitted the worker and the insurer, in a situation where the available funds were inadequate to fully compensate either party, to each recover a reasonable portion of the available funds.

Here, however, we are not dealing with a case such as *Hillman* in which there are insufficient funds available to pay the judgment. Rather, we are dealing with a situation in which, although funds are available to fully satisfy the original judgment, the application of the comparative negligence doctrine results in an award which is insufficient to fully satisfy either the worker's damages claim or the insurer's subrogation claim. Because *Hillman* is distinguishable on its facts as having involved considerations which are not particularly pertinent to the matter now before us, we do not believe that it controls the issue presented here.

■ The precise issue now before us is whether an insurer is entitled to claim subrogation in all sums awarded within particular categories of damages which are subject to subrogation, even if the proof adduced at trial shows that a significant portion of the jury's award pertaining to a particular category of damages was awarded for damages which the insurer did not pay and was not liable to pay. We do not believe that either KRS 342.700(1) or simple principles of fairness and justice will justify approval of an insurer's claim of priority regarding all sums awarded for items of damages which are subject to subrogation, where that claim is made regardless of whether the insurer has paid or is liable to pay the full amount of such damages to the worker.

■ Indeed, it is settled that an insurer's statutory subrogation right under KRS 342.-700(1) is a derivative rather than an independent right. *National Biscuit Co. v. Employers Mutual Liability Insurance Co.*, 313 Ky. 305, 231 S.W.2d 52 (1950). It makes little sense, therefore, to permit an insurer to exercise priority in regard to anything beyond the sums which it has paid or is liable to pay to the injured worker.

■ Here, as a result of Fox's own negligence, he is entitled to recover from the third-party tortfeasor only 44% of the total damages which the jury determined he sustained as a result of his work-connected injury. Pursuant to the express wording of KRS 342.700(1) and the relevant authorities, therefore, USF & G is limited in its derivative action against Mutual to recovering only 44% of the amount of the indemnity paid or payable to Fox. Nothing in the statute or the relevant authorities provides USF & G with any legal right to recover 44% of those additional portions of the award for lost wages and permanent impairment of earning capacity which USF & G neither paid nor is liable to pay, as the loss in regard to those portions of the award was incurred by Fox rather than by USF & G. To conclude otherwise would create an unjust right to reimbursement which is not authorized by the language of the applicable statute. We hold, therefore, that the trial court did not err by finding that USF & G is entitled to recover only 44% of the actual sums which it paid to Fox respecting the jury's larger awards for medical expenses, lost wages, and permanent

impairment. Moreover, as we view it, our conclusion does not permit Fox to make a double recovery. Instead, it merely permits him, like USF & G, to make a partial recovery of certain damages which he incurred.

The court's judgment is affirmed.

All concur.