**AIK SELECTIVE SELF INSURANCE FUND, Appellant,**

v.

**David MAY; D.S.A., Incorporated; and James O'Guin, Appellees.**

**No. 95–CA–2009–MR.**

Court of Appeals of Kentucky.

Feb. 7, 1997.

Rehearing Denied April 11, 1997.

Discretionary Review Denied by Supreme Court Oct. 22, 1997.

George T.T. Kitchen, III, Dennis L. Mattingly, Williams & Wagoner, Louisville, for appellant.

Richard C. Roberts, Whitlow, Roberts, Houston & Straub, Paducah, for appellees.

Before, GARDNER, JOHNSON and KNOPF, JJ.

KNOPF, Judge.

David May was employed by Paducah Sheet Metal. While working on a construction project for the Lone Oak Church of Christ (the Church), May was injured when he fell from a ladder. May collected workers' compensation benefits from his employer's workers' compensation insurance carrier, AIK Selective Self–Insurance Fund (AIK). May filed a lawsuit against D.S.A., Incorporated (D.S.A.), a contractor which performed construction on the Church. May's lawsuit was also filed against James O'Guin, another contractor, who owned the ladder and also worked on the Church. D.S.A. and O'Guin claim that May and Paducah Sheet Metal were negligent. O'Guin filed a third-party complaint against the Church and Dean King, a subcontractor of O'Guin. O'Guin's third-party complaint was dismissed.[1] The parties stipulated that AIK had paid $125,-574.23 to May as workers' compensation benefits. One month prior to the scheduled trial, D.S.A.'s and O'Guin's counsel informed May and AIK that they were willing to negotiate jointly or separately. About a week before trial May was able to reach a settlement with the defendants.

The defendants also made an offer to AIK to resolve its claim for workers' compensation benefits but that offer was rejected.

May settled with D.S.A. and O'Guin for $200,000.00. The settlement agreement stated in part:

1. O'Guin's third-party complaint sought indemnity from the Church and King based on evidence found in discovery that an employee of the Church or an employee of King may have allegedly been negligent. Neither contractual indemnity nor vicarious liability was alleged. The trial court found that May could not recover from the third-party defendants because he had not sued them and the statute of limitations had run. Furthermore, the trial court found that O'Guin could not recover anything from the Church or King by way of indemnity or contribution because all the defendants' liability would be limited to only their portion of fault. The trial court cited KRS 411.182, Hilen v. Hays, Ky., 673 S.W.2d 713 (1984), and Floyd v. Carlisle Construction Co., Ky., 758 S.W.2d 430 (1988), and for these reasons dismissed the third-party complaint. Whether the dismissal was appropriate is not an issue on appeal.

This Release DOES NOT INCLUDE OR EXTEND TO the subrogation claim of AIK SELECTIVE SELF INSURANCE FUND ("AIK") which is the workers' compensation carrier of May's employer, against DSA and O'Guin, for money it has paid to and on behalf of May as workers' compensation benefits arising out of said injuries of May on April 29, 1990.

The agreed order of partial dismissal also stated that all of May's claims are dismissed except the claims against D.S.A. and O'Guin for workers' compensation benefits.

AIK moved to require an apportionment of the settlement proceeds in order to receive a portion of the settlement as reimbursement for the paid workers' compensation benefits. The trial court denied the motion. Instead, the trial court set a trial date for AIK to pursue its subrogation rights on its own. AIK appeals.

■ On appeal we must first address D.S.A. and O'Guin's argument that the appeal is not from a final and appealable order even though the order states that it is final and appealable. O'Guin argues that AIK's claim for the benefits it paid remains pending. Thus, the trial court's order was interlocutory because it did not terminate AIK's claim or finally dispose of the issues. AIK's claim, O'Guin contends, remained open for litigation.

There is a distinction however, in AIK's claim for reimbursement from an agreed settlement or from a future trial. While AIK may still be able to pursue its subrogation claim against O'Guin and D.S.A. on its own, AIK cannot seek reimbursement from the settlement proceeds as a result of the trial court's order. The trial court has determined that AIK has no right to recoup paid benefits from May's settlement. Thus, AIK's claim to the settlement proceeds has been terminated and finally resolved by the trial court's order. *Murty Bros. Sales, Inc. v. Preston*, Ky., 716 S.W.2d 239 (1986). Consequently, this order is final and appealable and we will decide the case on its merits.

■ AIK heavily relies on *Mastin v. Liberal Markets*, Ky., 674 S.W.2d 7 (1984), which allowed the workers' compensation insurance carrier to assert its subrogation claim and recoup paid benefits from a settlement reached between the plaintiff and the tortfeasor. While AIK argues that *Liberal Markets* provides that the insurance carrier is entitled to enforce its subrogation rights immediately upon a settlement and have an unbiased trier of fact allocate the proceeds to specific elements of damage, we do not believe that *Liberal Markets* applies to the facts of this case.

In *Liberal Markets* the Court recognized in its opinion that it was an "unusual" case. The plaintiff had reached a settlement with one of three defendants. The settlement stated that it was a full release for all of the plaintiff's claims against that one defendant. The settlement also specifically recited that $5,000.00 was paid for past, present and future medical expenses and $5,000.00 was paid for lost wages and destruction of earning capacity. After the settlement, the insurance carrier paid an award of workers' compensation benefits to the plaintiff without knowledge of the plaintiff's settlement. Clearly, the settlement indicated that the plaintiff obtained money for the same elements of damages that she also had recovered from the workers' compensation insurance carrier. She had, without a doubt, effectuated a double recovery which KRS 342.700 prohibits. Consequently, the Court devised a method by which the insurance carrier could obtain immediate reimbursement. First, the trial court must determine if the allocation of damages in the settlement was unreasonable. If the court finds that the settlement allocation was unreasonable, then the court must determine the correct amount for each element of damages and an allocation between those elements subject to statutory subrogation and those not so subject. *Id.* at 13.

In this case May clearly excluded the claim for workers' compensation benefits. The settlement and release in this case is more similar to the settlement and release utilized in *Zurich American Ins. Co. v. Haile*, Ky., 882 S.W.2d 681 (1994). In *Zurich* the plaintiff settled with the tortfeasor on the first day of trial for $40,000.00. The settlement "did not include any benefits which had already been paid to [the plaintiff] as workers'

compensation benefits." *Id.* at 683. Because the insurance carrier had said it was not prepared to independently litigate its subrogation interest, the trial court dismissed its claim. The Court in *Zurich* reversed the trial court, holding that the insurance carrier should have an opportunity to prepare and pursue its subrogation claim after the plaintiff has entered into a partial settlement. The Court held:

> If, as here, the claimant and the tortfeasor elect to enter into a partial settlement excluding those items of damages for which the collateral source payor is subrogated, either before, at the commencement, or during the trial, such arrangements are not a device cutting off otherwise valid subrogation rights. The subrogated insurance carrier then should be permitted to independently pursue its assigned interest. If the subrogee's interest is sufficiently valuable to incur litigation costs, it will separately pursue the litigation after a partial settlement.

AIK argues that *Zurich* is distinguishable because the insurance carrier wanted to independently pursue its claim at trial but that *Zurich* does not mandate that the carrier proceed with litigation. AIK states that it does not want to litigate because May's settlement was enough to totally reimburse AIK.

AIK's argument ignores a fundamental principle of its subrogation claim. AIK can recover from May only to the extent that May has recovered for the same items of damages that AIK has paid or is liable to pay. AIK has no right of subrogation for items of damage that are not covered by workers' compensation. *Hillman v. American Mut. Liability Ins. Co.*, Ky., 631 S.W.2d 848 (1982), held that the workers' compensation insurance carrier had no right of subrogation to items of damage such as pain and suffering that are not covered by workers' compensation. *U.S. Fidelity & Guar. Co. v. Fox*, Ky.App., 872 S.W.2d 91 (1994), held that the workers' compensation insurance carrier had no right of subrogation for amounts the employee recovered that exceeded the benefits for the same items of damages for which the insurance carrier had paid or was liable

to pay for lost wages and for permanent impairment of the power to labor and to earn money.

In this case May specifically settled his claim against the defendant for items and amounts of damage that are not covered by workers' compensation. This settlement was reached and an amount to compensate May was agreed upon on the condition that it did not include the claim for workers' compensation benefits. AIK has no subrogation claim against a settlement that clearly does not include a recovery for workers' compensation benefits. *Cf., Mastin v. Liberal Markets, supra.*

AIK has not lost its subrogation claim. When an employee, like May, enters a partial settlement and no longer pursues the claim for the insurance carrier, *Zurich* allows the insurance carrier to pursue its claim on its own, if it so desires. AIK can decide if its claim is sufficiently valuable to independently pursue through litigation or AIK can decide that its claim is not worth independently pursuing. By choosing not to pursue a claim, AIK merely pays the insurance benefits it is contractually obligated to pay.

Finally, the Court in *Zurich* remanded the case with directions for the insurance carrier to "go forward, if it so elects, with proof of the liability of the alleged tortfeasor and of damages to the extent of [the insurance carrier's] workers' compensation insurance payments." *Id.* at 687.

Consequently, we affirm the trial court's order denying AIK's motion to allocate and apportion May's settlement proceeds. Pursuant to *Zurich*, AIK can pursue its subrogation claim in a trial proving liability and damages.

For these reasons, we affirm the McCracken Circuit Court.

All concur.