Letha C. DAVIDSON, Appellant,

v.

TRAVELERS INSURANCE
COMPANY, Appellee.

No. 2000–CA–001002–MR.

Court of Appeals of Kentucky.

Sept. 14, 2001.

Don F. Schmidt, Edward F. Rectenwald,
Louisville, for Appellant.

David K. Barnes, Deanna M. Tucker,
Louisville, for Appellee.

Before BARBER, COMBS, and
TACKETT, Judges.

*OPINION*

COMBS, Judge:

Letha C. Davidson appeals a trial court order allocating certain settlement proceeds and awarding subrogation credits in favor of Travelers Insurance Company ("Travelers"). We vacate and remand for further proceedings.

Upon entering Louisville's Humana Hospital Southwest ("Humana") on August 28, 1989, Davidson, a nurse, slipped and fell on a rubber mat. She sustained severe personal injuries. Since Davidson was working within the scope of her employment with Home Care Partners, Inc. ("HCP") at the time of her fall, she filed a workers' compensation claim. As a result, she was paid benefits totaling approximately $110,000.00 by Travelers, the workers' compensation insurance carrier for HCP. Davidson also filed this negligence action against Humana and Rugged Carpet Rental, Inc., ("Rugged Carpet"), manufacturer of the door mat. Travelers intervened in the civil action to recoup medical expenses and income benefits that it had paid and would yet pay to Davidson as workers' compensation benefits.[1]

1.  KRS 342.700(1) provides as follows:

Whenever an injury for which compensation is payable under this chapter has been

In 1992 and 1993, Davidson agreed to settle her personal injury claims against Humana and Rugged Carpet. The combined settlement of $850,000.00 did not provide for attorneys' fees or expenses. The proceeds were not expressly allocated among the several types of damages that Davidson sought to recover.

Under the settlement terms, the tortfeasors did not assume responsibility for any subrogation rights of the employer or insurance carrier under the workers' compensation statutes. By separate agreement, Travelers settled its intervening claims against Humana and Rugged Carpet directly, specifically retaining its claims for any workers' compensation benefits paid to Davidson after November 5, 1992. Travelers notified Davidson that it intended to pursue its subrogation rights against her settlement proceeds for any workers' compensation benefits paid after November 5, 1992.

Davidson agreed that Travelers would be entitled to a credit for those sums that she had received in settlement of her tort action which would duplicate future workers' compensation benefits, but the parties could not agree as to the extent of Travelers's subrogation interest. Pursuant to *Mastin v. Liberal Markets*, Ky., 674 S.W.2d 7 (1984), and *Hillman v. American Mutual Liability Ins. Co.*, Ky., 631 S.W.2d 848 (1982), the parties asked the trial court to allocate the settlement proceeds between categories of compensable and noncompensable damages items under the workers' compensation statutes and to award Travelers a credit against its future obligation if necessary.

The trial court correctly held that Travelers may recover a subrogation credit only to the extent that Davidson had recovered for the same items of damage that Travelers has already paid or will be liable to pay. Davidson presented sufficient evidence to enable the court to allocate the damages properly.[2] She presented the court with testimony from a vocational expert, who calculated the impairment of her ability to labor and to earn money to be $391,000.00; loss of replacement services was reported as $229,000.00. She claimed $350,000.00 in medical expenses and presented medical evidence tending to show that she would probably require four additional knee surgeries. Davidson claimed that she endured severe pain and suffering compensable at $2,000,000.00. She also sought punitive damages from the tortfeasors.

sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both. If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer of the filing of such action. If compensation is awarded under this chapter, the employer [or] his insurance carrier ... having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense.

2. The right to subrogation credit in a workers' compensation case is purely statutory. The burden of proving the affirmative defense of entitlement to a credit rests upon the employer or workers' compensation insurance carrier. Where *prima facie* evidence of a credit is introduced, the burden of going forward with evidence that a portion of the tort recovery is not available for subrogation credit is properly placed on the employee. *See Whittaker v. Hardin*, 32 S.W.3d 497 (2000).

In view of the evidence presented, the trial court found as follows: "of the settlement amounts received, $391,000.00 is apportioned to future lost wages (impairment to labor and earn money) and $150,000.00 is apportioned to future medical expenses." The trial court concluded that Travelers was entitled to subrogation credit against Davidson's settlement proceeds in the amount of $541,000.00. The court did not allocate specific sums representing the value of replacement services, pain and suffering, and punitive damages. Travelers was not required to bear a *pro-rata* share of Davidson's attorney fees, costs, or expenses.

On appeal, Davidson argues that the trial court erred by failing to determine an amount of recovery for each element of the damages she claimed in the civil action before designating what part of the sums received in settlement was subject to Traveler's subrogation interests. She also contends that the trial court erred by failing to require Travelers to bear a *pro-rata* share of the attorney fees, costs, and expenses associated with the civil litigation. We shall address each of these issues in turn.

█ Travelers contends that the court did not err by failing to provide the parties an itemized list allocating the settlement proceeds among each of Davidson's claims. "Although the Court did not provide specific line item for replacement services, pain and suffering, and punitive damages, it is clear that the court intended the remaining $309,000.00 to cover [Davidson's] remaining damages." Brief for Appellee at 6. According to Travelers, the court's only relevant finding concerned its division of the settlement proceeds into one of two categories: either "compensable" or "noncompensable" under the workers' compensation statutes. Because the insurer is entitled to recoup those sums duplicative of the workers' compensation benefits paid out or expected to be paid out, Travelers maintains that this categorization alone sufficed to identify the extent of its subrogation interest.

We disagree with Travelers's assessment of the proceedings. In *Great American Ins. Companies v. Witt*, Ky.App., 964 S.W.2d 428 (1998), we reviewed a trial court order reducing the proceeds of a jury verdict as to the subrogation recovery of a workers' compensation insurance carrier. We distinguished between situations in which injured employees were able to recover fully from both a tortfeasor and the workers' compensation insurance carrier *versus* those situations where they were not. Citing the Kentucky Supreme Court's opinion in *Wine v. Globe American Casualty Co.*, Ky., 917 S.W.2d 558 (1996), we held that where an employee has not recovered fully from the tortfeasor, the insurer is not allowed to recover its full subrogation interest. Injured employees and workers' compensation insurance carriers are no longer on a par in seeking recovery for their losses. Priority is given to "making whole" the injured employee. *Id.*

Because Davidson and the tortfeasors did not agree to an allocation of the proceeds among the items of damages sought, the fact-finder bore the duty to account for the *entire* sum. While Travelers would urge us to indulge broad assumptions about the trial court's determinations regarding the employee's special damages in this case, we cannot agree that the obligation of the fact-finder is so summarily satisfied. Since Davidson is entitled to recover all of her damages before the insurer can recover its subrogation interest, it is necessary that the full extent of those damages be specifically and meticulously ascertained. It is possible that Davidson may well have chosen to discount her special damages in an effort to procure a

settlement in this case. However, it must be determined that Davidson has recovered *all* of her damages before the insurer recovers its subrogation interest.

Finally, we reiterate the established precedent that where the employee's counsel actually bears the burden of obtaining recovery from a third-party, "then whoever takes the money is chargeable with a share of the fee." *Stacy v. Noble,* Ky., 361 S.W.2d 285 (1962). Additionally, KRS 342.700(1) (upon which the insurer bases its right of subrogation) explicitly provides that the insurance carrier may recover from the third-party an amount "not to exceed the indemnity paid and payable to the injured employee, *less the employee's legal fees and expense."* (Emphasis added).

This matter is remanded to the Jefferson Circuit Court for appropriate findings regarding the nature and extent of Davidson's damages, the allocation of settlement proceeds between categories of compensable and noncompensable items of damage, an award of any appropriate credit to the workers' compensation insurance carrier, and a determination of the issue of attorneys' fees and costs.

ALL CONCUR.