AIK SELECTIVE SELF INSURANCE FUND, Appellant,

v.

Mark W. BUSH; and William Dixon, M.D. Appellees.

No. 2000–SC–0344–DG.

Supreme Court of Kentucky.

Feb. 21, 2002.

Rehearing Denied May 16, 2002.

W. Kenneth Nevitt, G. Phillip Williams, Williams, Wagoner & Nevitt, Louisville, for Appellant.

William F. McMurry, McMurry & Talbott, Louisville, Teresa A. Talbott, Goshen, for Mark W. Bush.

Mikell Grafton Skinner, Clark & Grafton, Louisville, for William Dixon, M.D.

COOPER, Justice.

On June 19, 1993, Appellee Mark W. Bush was overcome by carbon monoxide while driving a forklift for his employer, Advance Distribution Services. He was subsequently treated for his injury by Appellee William Dixon, M.D. Appellant AIK Selective Self–Insurance Fund provided workers' compensation coverage for Advance Distribution and, as of July 28, 1998, had paid workers' compensation benefits to or on behalf of Bush as follows:

| | |
|---|---|
| $ 27,809.22 | — temporary total disability |
| 185,000.00 | — permanent partial disability |
| 26,269.51 | — medical expenses |

$239,078.73

The temporary total and permanent partial disability benefits were paid pursuant to an approved settlement agreement between AIK and Bush. AIK remains liable for future medical expense as they are incurred. KRS 342.020(1).

Bush filed this tort action against Dixon and others claiming, *inter alia*, that Dixon was negligent in providing treatment for his injury and thereby exacerbated the injury and prolonged his disability. An employer or its insurance carrier is liable for workers' compensation benefits for any aggravation of the initial injury caused by necessary medical treatment of that injury. *Elizabethtown Sportswear v. Stice*, Ky.App., 720 S.W.2d 732, 734 (1986). Bush was precluded by KRS 342.690(1), the so-called "exclusive remedy provision" of the workers' compensation act, from suing his employer for its negligence. However, pursuant to KRS 342.700(1), the employer's insurer, AIK, filed an intervening complaint against Dixon to recoup the workers' compensation benefits it had paid and would pay to Bush because of his injury. And, pursuant to CR 14.01 and *Burrell v. Electric Plant Bd.*, Ky., 676 S.W.2d 231 (1984), *overruled on other grounds, Dix & Assocs. Pipeline Contrs. v. Key*, Ky., 799 S.W.2d 24 (1990), Dixon filed a third-party complaint for contribution against Bush's employer, Advance Distribution. The effect of the third-party complaint was to permit an apportionment of liability against the employer and deny Bush the right to recover any damages attributable to the employer's percentage of fault. KRS 411.182(4); *Dix & Assocs. Pipeline Contrs. v. Key, supra*, at 29–31.

Pursuant to a pre-trial motion by Bush (to which AIK did not object), the jury was not informed that Bush already had been partially compensated by the receipt of workers' compensation benefits. During the trial, however, the jury was made aware through the testimony of a physician that Bush had filed a workers' compensation claim. At Bush's request, the trial judge admonished the jury that "whether or not Mr. Bush is receiving workers' compensation is not an issue in this case. If Mr. Bush were to receive workers' compensation benefits, he would have to reimburse the provider of those benefits out of any award he may receive from this action." The trial judge repeated that admonition immediately prior to reading his written instructions to the jury.

Following deliberations, the jury returned a verdict finding that Bush had been damaged as follows:

| | |
|---|---|
| $ 134,680.00 | — Lost wages |
| 26,269.51 | — Past medical expenses |
| 700,336.00 | — Future lost wages |
| 139,651.17 | — Future medical expenses |
| 1,000,000.00 | — Pain and suffering |

$2,000,936.68

The jury apportioned 25% of the fault against Dixon and 75% against Advance Distribution, thus reducing the total judgment to $500,234.17, the amount proportionate to Dixon's percentage of fault. Contrary to his admonition to the jury, however, the trial judge did not permit AIK to recoup from the judgment any amount of workers' compensation benefits it had paid to Bush. The Court of Appeals affirmed. On discretionary review, AIK asserts that it is entitled to reimbursement from the judgment of its full claim of $239,078.73, plus the entire amount of the judgment awarded for future medical expenses for which AIK remains legally liable per KRS 342.020(1). Bush asserts that the "made whole" rule applied in *Wine v. Globe American Casualty Co.,* Ky., 917 S.W.2d 558 (1996), and *Great American Insurance Cos. v. Witt,* Ky. App., 964 S.W.2d 428 (1998), supports the holdings of the trial court and the Court of Appeals and precludes AIK from obtaining any part of the judgment. We conclude that AIK is entitled to recoup 25% of its payments of temporary total and permanent partial disability benefits from the judgments for lost wages and future lost wages; 25% of its payments of medical benefits from the judgment for past medical expenses (which, of course, will exhaust that portion of the judgment since all of Bush's past medical expenses have been paid by AIK); and 25% of any medical expenses which it has paid since the judgment of July 28, 1998, from the judgment for future medical expenses; from all of which must be deducted Bush's fees and expenses incurred in the prosecution of this action, to the extent such have not already been paid by Dixon; and that AIK is entitled to a 25% credit against all future medical expenses which it may pay for or on behalf of Bush for these injuries,

up to a maximum of the balance, if any, of the judgment for future medical expenses.

KRS 342.700(1) provides:

Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, *but he shall not collect from both.* If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer and the special fund of the filing of the action. If compensation is awarded under this chapter, *the* employer, his *insurance carrier,* the special fund, and the uninsured employer's fund, or any of them, *having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expenses.*

(Emphasis added.)

## I. SUBROGATION AND COMPARATIVE NEGLIGENCE.

AIK argues that KRS 342.700(1) does not limit the employer's or insurer's subrogation claim in the event of apportionment on the basis of comparative fault. There is ample authority from other jurisdictions to support that proposition. *Tolar v. Caterpillar Tractor Co.,* 793 F.2d 654 (5th Cir. 1986) (construing Texas law); *Langley v.*

*J.L. Simmons Contr. Co.,* 152 Ill.App.3d 899, 105 Ill.Dec. 810, 504 N.E.2d 1328 (1987); *Walker v. Mlakar,* 489 N.W.2d 401 (Iowa 1992); *Land v. George Schmidt Co.,* 122 Mich.App. 167, 333 N.W.2d 30 (1982); *Kelsh v. North Dakota Workmen's Comp. Bureau,* 388 N.W.2d 870 (N.D.1986); *Goldberg v. Workmen's Comp.App. Bd.,* 152 Pa.Cmwlth. 559, 620 A.2d 550 (1993); *Courtright v. Sahlberg Equip. Inc.,* 88 Wash.2d 541, 563 P.2d 1257 (1977). There is also authority to the contrary, but premised primarily upon specific statutory provisions requiring a proportionate reduction of the subrogation claim if the injured workers' claim is reduced because of comparative fault. *Herrington v. Mayo,* 550 So.2d 745 (La.Ct.App.1989); *Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484 (Mo.Ct. App.1997). In fact, the 1993 amendment of the Missouri statute, Mo.Rev.Stat. § 287.150.3, appears to have been prompted by *Rogers v. Home Indem. Co.,* 851 S.W.2d 672 (Mo.Ct.App.1993), which interpreted the previous version of the statute as permitting full payment of the subrogation claim despite a substantial reduction of the injured worker's tort claim because of comparative fault.

█ What is now KRS 342.700(1) has been a part of our Workers' Compensation Act since its initial enactment in 1916. 1916 Ky. Acts, ch. 33, § 9, p. 354. The statute was originally compiled as KS 4890, then as KRS 342.055, and now as KRS 342.700(1). As originally enacted, the statute gave the right of subrogation only to the employer. A 1922 amendment extended the right to the employer's insurer. 1922 Ky. Acts, ch. 50. In *Book v. City of Henderson,* 176 Ky. 785, 197 S.W. 449 (1917), our predecessor Court held that under KS 4890, the employee could assert claims against both the employer and the third-party tortfeasor, albeit in different forums, but "to the extent he collects from

one he may not collect from the other." *Id.,* 197 S.W. at 451. Furthermore, "[t]he Legislature was careful to preserve to the employer the right to recover from the negligent third party anything paid to the employee under the provisions of the act. . . ." *Id.,* at 450.

We agree with AIK that the 1916 General Assembly did not intend that the employer's subrogation claim would be reduced because of the application of comparative negligence, for the concept of comparative negligence did not enter our common law until *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984). However, it was held long before *Hilen* that the employer's or insurer's subrogation rights were derivative of the employee's tort rights against the third-party tortfeasor, *National Biscuit Co. v. Employers Mut. Liability Ins. Co.,* 313 Ky. 305, 231 S.W.2d 52 (1950), and that "[t]he third party may interpose all defenses against the employer or his insurance carrier that he could invoke against the employee or his personal representative." *Napier v. John P. Gorman Coal Co.,* 242 Ky. 127, 45 S.W.2d 1064, 1066 (1931). Presumably, that meant that if the employee's right to recover in tort was barred by his/her contributory negligence, so, too, was the employer's subrogation claim. *Cf.* 82 Am.Jur.2d, *Workers' Compensation* § 451 (1992).

█ *Hilen v. Hays, supra,* held that contributory negligence was no longer a complete bar to recovery in tort; instead, a contributorily negligent plaintiff could recover that percentage of his/her total damages that correlated with the percentage of causation attributable to the defendant's fault. Comparative negligence is but a less stringent defense to a tort claim than had been contributory negligence and is just as applicable to an employer's or insurer's subrogation claim as any other defense. Thus, in *Dix & Assocs. Pipeline*

*Contrs, Inc. v. Key, supra,* we held that *Hilen v. Hays* limited the employer's or insurer's recovery to that percentage of its total claim that correlated with the third-party tortfeasor's percentage of causation and that the same principle applied whether the remaining percentage of causation is attributable to the employee's contributory negligence or, as here, to the negligence of the employer. 799 S.W.2d at 30. In *United States Fidelity & Guaranty Co. v. Fox,* Ky.App., 872 S.W.2d 91 (1993), the Court of Appeals held that the same result obtains under our subsequently enacted comparative negligence statute, KRS 411.182. We agree. Thus, AIK can recover no more than 25% of its total subrogation claim and, pursuant to *Hillman v. American Mutual Liability Insurance Co.,* Ky., 631 S.W.2d 848, 850 (1982), its recovery can be applied only against those elements of damages awarded in the judgment that correspond to the workers' compensation benefits that it paid, *i.e.,* past and future lost wages and medical expenses.

## II. APPLICATION OF THE "MADE WHOLE" RULE.

■ The trial court and the Court of Appeals both held that, despite the statutory policy against double recovery expressed in KRS 342.700(1), the common law "made whole" rule described in *Wine v. Globe American Casualty Co., supra,* entitled Bush to keep the entire amount of the judgment against Dixon. Bush claims that he has not received a double recovery, because he has not yet been fully compensated for his actual damages. Of course, *all* of the past medical expenses awarded in the judgment have been paid by AIK, as will be all future medical expenses when and if incurred. Thus, Bush was "made whole" with respect to his claim for medical expenses before he filed this tort action against Dixon. Nor can we assume that all of the temporary total and permanent partial disability benefits paid to Bush by AIK were included in the 75% of damages for past and future lost wages that are uncollectible because of the comparative fault apportionment. Assuming, as we must, that 25% of those benefits are included in the collectible portions of the judgment, Bush has received a double recovery to that extent. Thus, the only issue is whether the "made whole" rule precludes AIK from recovering 25% of the judgment for those elements of damages.

*Wine, supra,* noted that "*[i]n the absence of relevant statutory law* or contractual obligations between the parties, the answer to when the right of subrogation arises is rooted in equity." 917 S.W.2d at 561 (emphasis added). Citing *Couch on Insurance 2d* § 61:64 (Rev. ed.1983), *Wine* then held that under the common law doctrine of subrogation, "no subrogation rights exist (or the right does not arise) until the insured has first recovered the full amount of loss sustained," 917 S.W.2d at 562, and that "[u]nder general principles of equity, *in the absence of statutory law* or valid contractual obligations *to the contrary,* an insured must be fully compensated for injuries or loss sustained (made whole) before the subrogation rights of an insurance carrier arise." *Id.* (emphasis added). *Wine* involved subrogation claims by uninsured motorist insurance carriers brought pursuant to KRS 304.20–020(4). In *Great American Insurance Cos. v. Witt,* Ky.App., 964 S.W.2d 428 (1998), the Court of Appeals extended the "made whole" rule to a workers' compensation subrogation claim brought pursuant to KRS 342.700(1). In *Witt,* the jury had apportioned only 60% of comparative fault against the third-party tortfeasor, thus reducing the injured worker's judgment from $157,391.76 to $94,435.06. The insurer's total workers' compensation subrogation claim was for

$57,391.00. Unlike AIK, the insurer in *Witt* sought to recover only 60% of its total claim, or $34,434.60. The Court of Appeals held that application of the "made whole" rule precluded any recovery by the insurer because the injured worker could not be "made whole" unless the judgment he received exceeded $100,000.76:

$ 157,391.76 — total damages before application of comparative fault  
− 57,391.00 — workers' compensation benefits received  
$100,000.76 — amount needed to be "made whole"

Likewise, here, the trial court and the Court of Appeals held that Bush had not been "made whole" because the judgment was for less than $1,761,857.95:

$2,000,936.68 — total damages before application of contributory fault  
− 239,078.73 — workers' compensation benefits received  
$1,761,857.95 — amount needed to be "made whole"

---

In other words, AIK is entitled to nothing unless Bush receives an amount equal to 100% of the total damages found by the jury, less the workers' compensation benefits already received. This reasoning disregards the fact that, unlike the plaintiff in *Wine, supra,* Bush's reduced recovery is not due to the tortfeasor's inability to pay the judgment (Dixon has satisfied the judgment in full), but to the fact that the law does not permit him to recover a judgment for the full amount of the damages he sustained. As would have been the case if his judgment had been reduced because of his own contributory fault (as was the case in *United States Fidelity & Guaranty Co. v. Fox, supra* ), Bush's judgment was reduced because, by law, he cannot recover that portion of the judgment attributable to the negligence of his employer. KRS 342.690(1); KRS 411.182(4); *cf. Ingersoll Rand Co. v. Rice,* Ky.App., 775 S.W.2d 924, 930 (1988) (since an agreement to operate under the workers' compensation act is a "similar agreement," the employer is treated as a "released person" under KRS 411.182(4)).

Furthermore, as also noted in *Wine, supra,* at 562, the "made whole" rule is a common law rule grounded in equity; thus, it does not apply to statutory rights such as those created by KRS 342.700(1). The only jurisdictions that have applied the "made whole" rule to statutory workers' compensation subrogation claims have done so in reliance on specific constitutional or statutory provisions. In *Francetich v. State Compensation Mutual Insurance Fund,* 252 Mont. 215, 827 P.2d 1279, 1285 (1992), the Supreme Court of Montana held that the 1973 amendment of Article II, Sec. 16 of the Montana Constitution constitutionalized the "made whole" rule with respect to workers' compensation subrogation claims. Georgia's workers' compensation subrogation statute, Ga. Code Ann. § 34–9–11.1(b), provides that the workers' compensation employer or carrier is entitled to reimbursement *only* "if the employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury." That language has been held to codify the "made whole" rule. *Bartow County Bd. of Ed. v. Ray,* 229 Ga.App. 333, 494 S.E.2d 29 (1997). *See also* Fla. Stat. Ann. § 440.39(3)(a) (employer or carrier is entitled to full reimbursement *un-*

less, *inter alia*, the employee can demonstrate that he did not recover full value of the damages sustained because of comparative negligence).

However, with only one exception, that being our Court of Appeals' decision in *Great American Insurance Cos. v. Witt, supra*, no jurisdiction with a "normal" third-party statute has allowed the injured worker to recover both workers' compensation benefits and tort damages and *"keep both recoveries."* 6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 110.02, at 110–4 and –5 (Matthew Bender 1999) (emphasis in original). *See, e.g., McCarter v. Alaska Nat'l Ins. Co.*, 883 P.2d 986, 989 (Alaska 1994) (the "made whole" rule does not preclude full reimbursement of workers' compensation insurer); *Transamerica Ins. Co. v. Sydow*, 97 N.M. 51, 636 P.2d 322, 324 (N.M.App.1981) (any damages recovered from a third-party tortfeasor corresponding to workers' compensation benefits received are automatically assigned to the employer); *Liberty Mut. Ins. Co. v. Garry*, 574 N.W.2d 895, 896–97 (S.D.1998) (insurer's statutory right of subrogation is not defeated by the fact that the employee is not "made whole" by his tort settlement); *Castleman v. Ross Engrg., Inc.*, 958 S.W.2d 720, 724 (Tenn.1997) (the "made whole" rule does not apply to workers' compensation cases because the statute specifies the respective rights of the employer or insurer and the injured worker and does not condition the employer's or insurers's rights upon the injured worker's full recovery); *Brunet v. Liberty Mut. Ins. Group*, 165 Vt. 315, 682 A.2d 487, 489 (1996) (workers' compensation insurer is entitled to reimbursement to the full extent of its claim even if the injured worker's tort settlement only partly compensated him for his economic loss); *Bush v. Richardson*, 199 W.Va. 374, 484 S.E.2d 490, 494–95 (1997) (the common law "made whole" rule does not apply to a statutory workers' compensation subrogation because the statute does not merely provide for subrogation, but gives the subrogee the right to proceed in its own name and specifies who is entitled to recover what from the third-party tortfeasor).

KRS 342.700(1) does not merely provide for a right of subrogation, which, of course, the employer or insurer would be entitled to under common law principles, *Wine, supra*, at 561–62, but specifies that the employee "shall not collect from both" the employer and the third-party tortfeasor and that the employer or insurer can recover damages in its own name, not to exceed the compensation paid or payable to the injured employee, less the employee's legal fees and expense. Clearly, this is not a mere codification of the broad common law right of subrogation defined in *Wine*. KRS 342.700(1) specifies the rights and limitations of both the subrogor and the subrogee and tailors those rights and limitations to the peculiar nature of workers' compensation. It also requires that the employee's entire legal expense, not just a pro rata share, be deducted from the employer's or insurer's portion of any recovery. Unlike the uninsured motorists statute interpreted in *Wine*, KRS 342.700(1) expresses a legislative purpose that the employer or insurer is entitled to recoup from the third-party tortfeasor the workers' compensation benefits it paid to the injured worker; thus, the common law "made whole" rule cannot be applied to preclude that recovery. *Wine, supra*, at 562. To the extent that *Great American Insurance Companies v. Witt, supra*, holds otherwise, it is overruled.

### III. REIMBURSEMENT OF FUTURE MEDICAL BENEFITS.

■ AIK asserts entitlement to the entire portion of the judgment for future

medical expenses, reasoning that it will be required to pay all of those expenses pursuant to KRS 342.020(1). In fact, AIK claims that it has already paid unspecified additional medical expenses since the judgment date of July 28, 1998. As with the other elements of damages, AIK is entitled to a reimbursement of only 25% of medical expenses paid since July 28, 1998 or payable in the future. Of course, no one knows whether or to what extent future medical expenses will be incurred. If 25% of all post-July 28, 1998 medical expenses does not exceed the judgment amount of $34,912.79, one of these parties will receive a windfall. In that event, there is no reason to award the windfall to the insurer instead of the injured worker. Larson, *supra*, reports that when the statute does not specify how to deal with the allocation of future benefits, "the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier." Larson, *supra*, § 117.01[5], at 117–9. *Mastin v. Liberal Markets*, Ky., 674 S.W.2d 7, 14 (1984), provides some local authority for crediting an excess recovery against the employer's future liability for workers' compensation benefits, albeit not in the context of future medical expenses. *See also, Landaiche v. Lou–Con*, 461 So.2d 1107 (La.Ct.App.1984); *Overend v. Elan I Corp.*, 441 A.2d 311 (Me.1982); *Brocker Mfg. & Supply Co. v. Mashburn*, 17 Md. App. 327, 301 A.2d 501 (1973); *Goodman v. Travelers Ins. Co.*, 703 S.W.2d 327 (Tex. Ct.App.1985).

Thus, AIK is entitled to reimbursement of 25% of any medical expenses that it has actually paid on behalf of Bush since the judgment; Bush is allowed to keep the balance of the judgment for future medical expenses; and AIK is entitled to a credit for 25% of all medical expenses that it actually pays to or on behalf of Bush in the future up to a maximum of the balance of the $34,912.79 judgment remaining after reimbursement of payments already made.

## IV. CONCLUSION.

AIK is entitled to recover 25% of the compensation it paid in the form of temporary total disability and permanent partial disability benefits from those elements of the judgment for lost wages and future lost wages ($212,809.22 X 25% = $53,202.31); and 25% of the compensation it paid in the form of medical expenses up to the date of judgment from the judgment for past medical expenses ($26,269.51 X 25% = $6,567.38); and 25% of the compensation it has paid, if any, in the form of medical expenses since the date of judgment from the judgment for future medical expenses; less Bush's legal fees and expenses insofar as they have not been paid by Dixon (Dixon has satisfied Bush's bill for costs). AIK will also be entitled to a credit for 25% of any future medical expenses it pays to or on behalf of Bush up to a maximum of the balance of the $34,912.79 judgment for future medical expenses after payment of 25% of medical expenses paid since the judgment. The record does not reflect the amount of medical expenses, if any, paid by AIK since the judgment, or the amount of Bush's legal fees and unreimbursed expenses, if any. Thus, this case must be remanded to the Jefferson Circuit Court for such evidence and for the entry of a new judgment in accordance with the holdings in this opinion.

Accordingly, the judgment of the Jefferson Circuit Court and the decision of the Court of Appeals are reversed, and this case is remanded to the Jefferson Circuit Court with directions to receive additional evidence as necessary and to enter a new judgment in accordance with the holdings in this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE and KELLER, JJ., concur.

STUMBO and WINTERSHEIMER, JJ., dissent because *Great American Ins. Cos. v. Witt,* Ky.App., 964 S.W.2d 428 (1998), governs this case. AIK has a subrogation right but it does not take priority over the right of Bush to be made whole.